Mr. Bernard, you may proceed. Mr. Bernard, do you get dizzy coming from that side? Yeah, I do. It's very weird, I have to say. Good morning, your Honor. Good morning, counsel. First thing I want to point out is in the video it shows the defendant, before he hits the intersection, he's wide of the lane. While he's in the intersection, he's wide of the lane. The trial court points that out. And after the intersection, he hits the byline with his tires. I think that's pretty much what the video shows. Is that what everybody's talking about? Because as you just read the testimony, it sounds like the police officer and the trial judge are talking about two different locations. It almost seems like that, yes, your Honor. It seems like the judge is saying that it was on the curb where the police officer... Where he came around the police officer. Right, right. And the police officer stated it was like 100 to 150 feet on the curb, and it wasn't a, I don't know if you could call it a sharp curb, but where his squad car was. And then there was a curb coming up later on, but... And how far away from the location where the officer had stopped the first, where he was taking care of the first incident, is that turn location where the officer says this occurred? I don't think it was more than a couple hundred feet. And so, you know, after this, it's obvious the trial court didn't believe the officer's testimony that he made the stop. We disagree with that. We think you can look at the video and see that truck going around, and then you can come to a complete stop, and your car, car and a half left behind the squad car, and then proceed through and accelerate up to 5 to 10 miles an hour around the car. The judge didn't think that that was possible. We just think that really is a misreading of the video. I understand that speed could affect a turn or speed generally, but why is the speed that the vehicle was going as it passed the squad car going to make any difference? Well, I don't think it does. He thought it made a difference because I guess that was so that he could discount the police officer's testimony that when he looked through his side view mirror, he saw the headlights dipping, the car making not an emergency braking, but slowing down very quickly. Have you ever gone around that curve that's in question there? Yes, I have, Your Honor. And you can't, and I have too, you can't see what's around that curve as you're coming around it until you hit the front end of the curve. So why is it unusual that someone would come around that curve and be going the speed limit and have to slow down rather suddenly? Well, it was 150 feet. You could certainly slow down. Obviously, when the squad car is on, the lights are going. You can see that. You can see reflections even before you hit that part of the road. I think when you see red flashing lights when you're driving, you immediately slow down even if you don't see the squad car immediately. But I think even, you know, the fact that we think that the trial court, you know, assessed it wrongly, and, of course, you can take the NOVA review. You can look at it yourself and make that decision. But we think now we urge this court to make a bright line rule. The fact that the driver, the defendant, hit the fog line just as a matter of law should mean that that gives the officer the reasonable articulable suspicion to make a brief traffic stop. This is a probable cause. This is just a Terry step. And we think since Haggett and Flint and some other cases that this is the— Why don't we just make a bright line rule that the cop can stop anybody for any reason at any time, anywhere? Well, I think this is a little bit different. I think anybody who's driving today could very easily be articulably suspicion. I could have an articulable suspicion that anybody who's driving today is under either drugs, prescription or contraband, or alcohol, or they are texting or they're smoking or they're eating or they're talking on the phone without using Bluetooth, so that there's an articulable suspicion that if you stop anybody, somebody is violating the law. Don't you think? There are cases out of other states that say that it's gotten to the point where the plethora of traffic regulations is such that nobody cannot violate traffic laws, rules, regulations while they drive. Well, I guess I couldn't agree with that, Your Honor. The fact is if you're driving within your lane and you're not leaving, you're not touching a fog line, you're not touching the center line, there's no reasonable articulable suspicion. Have you ever seen anyone drive perfectly straight in front of you? And if you say yes, then I don't think you're watching. I guess I don't notice when people in front of me, you know, maybe hit the line or don't hit the line. I'm not worried about that. I'm just worried about just going straight down the line. You know, I guess there's that discretion that the police officer does have. Once a police officer stops someone, they rarely say, okay, glad you're fine, see you later. Well, actually, Your Honor, that happened to me on Route 31 a couple years ago. He told me that I hit the fog line and pulled me over. Oh, you would have gotten a ticket if we agreed with you. Well, I had three elderly ladies with me, so he knew I was impaired. But, yes, it has happened to me, Your Honor. But the fact is, you know, he made the Terry stop. He took my license and said, okay, you know, you're fine. You know, he saw the ladies. He knew I wasn't trafficking or anything. And he let me go, and that was a very brief stop. It was maybe a minute, you know. But this officer was already angry at the defendant or suspicious of the defendant when he came around the corner. Well, I think that's true, and so it heightens his awareness. He generally believed that he was going to be seriously injured the way he came, you know, rolling behind him. So I'm sure, you know, that brought, you know, that heightened his concern. And then when he fouled him, he saw, you know, saw him go wide. And in that intersection, there was no fog line, but he saw him go wide. The video shows that before he entered it, when he was in it, and then he hijacked and hit the fog line. So I think that gave him a reasonable articulable suspicion. The probable cause, absolutely not, but I think it gave him enough to, you know, Terry stop. The fact this is, this fog line rule does help for the fact that there's still plenty of people out there driving, you know, in there. Have you ever scrutinized the location of the fog line? Because I have. Because we've had other cases like this before. And the fog line seems to be painted on the very edge sometimes. And other times it's six inches from the edge of the blacktop, and sometimes it's a foot. So my question to you is, where's the lane if the fog line is six inches or a foot inside what the blacktop would be before the shoulder comes up? Well, my understanding is they put that fog line at a certain distance from the center line. So it depends how wide the shoulder is and how much pavement you have. But that fog line, my understanding is the same distance from the center line to the fog line in any, you know, in a highway. Do you know if the transportation has regulations relative to the construction of highways and the width of the lanes depending on whether it's a one, two, three, four or more lane highway? Yes, and I think so. But sometimes, you know, in some areas they have very wide shoulders in areas, I've been in tourist areas where, you know, people bike. And so they do have wider lanes. But the lining is still the same. Well, I just had a guy that said you cannot pass a bicyclist. It was 25 coming north. You can't pass a bicyclist unless you're at least three feet from him. If you're at least three feet from him, you've had to move out of your lane. Right, and that's the other thing you have to see. If you have to stay in a lane nearly as practical, that's what it says. If there's an object in the lane, of course, that's not a reasonable suspicion because you're moving around. If we make it a bright line test, similar to the law relating to the distance from a school or a church regarding drug sales, don't you think that in order to lay a proper foundation for a bright line test, that the police officer or someone could come and testify to the fact that where the individual touched the fog line, that the fog line was outside the lane and thus he actually moved outside the lane instead of, if the fog line were inside the lane, touching it would not be a violation? Well, if I understand your question correctly, the lane ends when the fog line starts. What authority do you have for that? Because I believe the rules say something different. The rationale is that if you don't make it that bright line test, you come to an absurd result when you look at the statute. I know most cars, trucks, when your tire hits the line, you've got a car hanging over that line. Now, if that happens on a center line and you've got a car coming up with the tires on the center line and another car coming up on the center line, you have a... The problem is the fog line isn't a center line. Pardon? A fog line is not a center line, so your argument only makes sense if you're driving backwards. I don't agree. I think there's plenty of... In my neighborhood, we have parking in white lines. People's... If you're on the fog line or the white line, you could hit a parked car, which was pointed out in one of the federal cases that a defendant cited. If you touch it? If you touch it, correct. Well, you're using on and touch. I mean, they're two different things, aren't they? On and... No. I think it's the same thing. And that's where the bright line comes in. If you touch it, your car is hanging over that line, your truck. And there could be another car, you know, on the stripe lines. If you're touching that line and another car is touching, the tires will hit. So you have to stay within that line as near as practicable. Near as practicable as... No, not when the bicycle hits it. No, not when there's a rock in the center. No, if there's a big pothole or you see a dog or a raccoon run across. You know, they're not picking you up for that. Well, it sounds like they would be because if the officer saw you cross or touch the fog line, he might stop you and pay attention to whether or not you're intoxicated or otherwise an extremist. But whether or not he would be able to cite you for a violation of the change of lane, especially if you pointed out at the time to him that there was an old lady lying on the fog line or in the middle of the lane or whatever, or there was a dog crossing, it would mean that there wouldn't really be problem caused. So if in this instance the defendant had said there was a dog running across the road or was at least on the center line and I pulled over to touch, does that then mean that the police officer who doesn't remember seeing a dog no longer has problem caused or an articulal suspicion? Because he only saw the crossing or touching of the line and he didn't see any surrounding circumstances. Again, the video that even this officer admitted that he thought his memory wasn't as accurate as the video, you have to look to the video and that's what comes in. Problem caused is a lot different than a reasonable suspicion. And that's what we're saying. That's up for the officer to decide and listen to the person. You see a dog run off, you see an animal, you see rocks, that's their job to look and testify to that. And then it becomes just a recovery. So the underlying test is somebody touches the line and the officer doesn't see anything that would indicate that touching the line was practical or practical. Okay, well, the fact that the officer has to come in if he wants to show probable cause, he has to say, okay, after the stop, and then I stop him and I arrest him, there were no obstacles, there were no potholes, there were no dogs, there were nothing else. That's a lot different than a Terry stat, you know, where an officer comes up to somebody at a corner and just has some idea, and then, oh, okay, you know, my suspicion is not reasonable and just leaves. This is the same thing with a car. But a car is much more dangerous than the hands of a drunk driver. Thank you. You'll have a few minutes to vote. Ms. Cantalla. Good morning, Your Honors, Counsel, and may it please the Court. My name is April Cantalla, and I represent Defendant Appellee Michael Papenbrink on behalf of the Office of the State Appellate Defender. Contrary to the state's assertion, to decide this case, this Court does not need to make a bright-line rule and decide generally whether touching versus crossing a lane line justifies a traffic stop. This Court need only decide whether it was reasonable for the officer in this case to believe that Mr. Papenbrink was not driving as nearly as practicable within a single lane when he briefly touched the fog line under the circumstances present in this case. The key here are the circumstances. And how far do you think the location from the stop to this turn is? I mean, is it a mile? Is it the hundred or fifty feet or so that counsel has represented? Your Honor, judging by what's shown in the video, it doesn't appear that it could be more than perhaps a few hundred feet from where Mr. Papenbrink maneuvered around the squad car and then entered that wide left curve in the road at McLean Boulevard. The relevant circumstances in this case are that at the time the split-second touching of the fog line occurred, the fog line had been broken. At the point where Mr. Papenbrink entered the intersection at McLean Boulevard, the fog line ended and then reappeared on the other side of the intersection. That's certainly a relevant circumstance here. It made it particularly difficult to judge where the right lane boundary was at that point. Additionally, there's the wide curve in the road. It was nighttime. These were all facts that the trial court relied on in finding that those circumstances were obvious to the officers. Was the highway illuminated with streetlights? Your Honor, it's not clear whether there's streetlights there. There is a traffic light at that intersection, but I don't recall seeing any streetlights in the video along that stretch of road. In addition to the break in the fog line, the curve in the road, the fact that it's nighttime, you have a situation where Mr. Papenbrink is still in the process of recovering from having to maneuver around an obstacle that was in the roadway. He had to slow substantially to go around the squad car, which was blocking the southbound lane that he was in, and then he was trying to accelerate and get back up to speed, which he testified it was 40 to 45 miles an hour at various points along that stretch of road. So he's trying to increase his speed as he's entering this curve where there's a break in the fog line. All of that was apparent to the officer, and under those circumstances no reasonable person would believe that Mr. Papenbrink was not driving as nearly as practicable within his lane under those circumstances. Is it true that at some point the trial court noted that it looked like the truck was traveling outside of its lane? No, Your Honor. What the trial court actually said was, I would just simply note that although it appears that the truck may not be in the complete lane in the intersection, there are no lane markings to delineate what is and is not the lane at that point. So he's talking about the intersection. So, yes, at the point where Mr. Papenbrink allegedly was going wide, where there was no fog line, that was through the intersection at McLean Boulevard. So the trial court was merely noting that the evidence regarding whether Mr. Papenbrink deviated from his lane before touching the fog line was at best inconclusive. And additionally, the officer never testified or articulated that a lane deviation had occurred before or in the intersection and that that was among his reasons for stopping Mr. Papenbrink. He mentioned the near collision, which he alleged occurred when Mr. Papenbrink first approached, and then the touching of the fog line. Those were the reasons the officer gave for effectuating the traffic stop. And regarding the near collision that the officer alleged occurred, the trial court found that allegation was not credible based on Mr. Papenbrink's testimony to the contrary and on the circumstantial evidence that could be gleaned from the video. So because that determination was solely based on the trial court's factual findings and credibility determinations and the reasonable inferences drawn therefrom, it should not be disturbed on appeal. Regarding Peeble v. Hackett, that case does not dictate a different result in this case than what occurred in Peeble v. Leyendecker. In Hackett, the officer there saw the defendant cross a lane line multiple times for no obvious reason. It was on that basis that the investigatory stop was deemed proper. In contrast, this case, like Leyendecker, involved a single line touching as opposed to the line crossing that occurred in Leyendecker. And the officer in this case even acknowledged that at the point that occurred, Mr. Papenbrink was going around a wide curve in the road. So all of the circumstances that made it obvious why there was that brief line touching were apparent to the officer. So additionally, unlike Hackett, this case involved a situation where the defendant gave affirmative testimony explaining his reasons for touching the line, and the video also gave objective evidence which showed that. And the trial court made credibility determinations here. None of that occurred in Hackett, and the Illinois Supreme Court specifically pointed that out. There was no affirmative testimony from the defendant explaining his reasons for crossing the line twice, and there were no credibility determinations made. So in this case, again, Mr. Papenbrink pointed to facts which would have been apparent to the officer that explained his reasons for that brief touching of the fog line. And the trial court found, based on the circumstances Mr. Papenbrink described, as well as the video, including that it was nighttime, he was accelerating around a wide curve in the road, there was a break in the fog line, all of those things, that it was not reasonable under those circumstances to believe he had committed an improperly used infraction. Regarding Pupil v. Leyendecker, as is stated at length in Mr. Papenbrink's brief, the facts of that case are nearly identical to this case, and there's nothing about Pupil v. Hackett which diminishes the precedential value of Leyendecker. The trial court in this case even noted in issuing its ruling that in reading Leyendecker, even though it was decided before Hackett, its reasoning tracked with the reasoning that was used in Hackett. There was nothing about Hackett that diminished Leyendecker. So I think that's particularly relevant here. Regarding the State's discussion of whether a car is touching the line and it could collide with another car, I believe the State's referring to United States v. Bassels, which it discussed at length in its reply brief, despite noting that it's not controlling here. Notably, the State did not discuss United States v. Collin, which was the other persuasive authority cited by Mr. Papenbrink. That case rejected similar reasoning as was applied in Bassels and concluded that touching rather than crossing a lane line does not justify a traffic stop. So it's important, I think, to note that both of those cases are persuasive authority and they were cited by Mr. Papenbrink simply to illustrate that other courts have recognized the determination of whether a motorist has driven as nearly as practicable within a single lane is a fact-sensitive inquiry. It requires consideration of the totality of the circumstances, including road features and driving conditions. Additionally, in Bassels, the facts of that case were central to its outcome. The defendant in that case was driving on a straight stretch of highway that was well-maintained, there were no obstacles, there was no wind, and all of those things were noted by the court. Those were not the circumstances present in this case. What is practicable depends on the circumstances that are actually present, not what theoretically could happen if there was a car here or a dog there or a rock there or what have you. The circumstances that were actually present in this case dictate that no reasonable person would believe that Mr. Papenbrink was not driving as nearly as practicable within his lane. So you indicated we would not have to make a bright-line ruling in this particular case because of the facts and circumstances you're identifying. Do you think a bright-line ruling would cause more problems, possibly, than where we are now based upon the resources that you've reviewed? Yes, Your Honor, and I think that Colin seems to acknowledge that. Whether it is reasonable to believe that someone is not driving as nearly as practicable within their lane is a fact-sensitive inquiry. It depends on the circumstances. So communicating to police officers that any time you see a person even touch, not cross, a lane line, that that is a reason to stop them and inquire further as to their reasons for touching the line, that is inappropriate where the reasons for the touching are obvious, where the circumstances are apparent. If there's a dog in the road or something like that, it wouldn't make sense to create a bright-line rule that says any time there's a touching, it's okay to do a traffic stop. The rest of the circumstances, the totality of the circumstances, matter in this context. What about a bright-line rule that says that touching the fog light is not crossing it, and not crossing it is not a change of lane? Well, Your Honor, the Ninth Circuit in Collin did come to that clear conclusion. I certainly think that that makes more sense than saying any touching is equivalent to a crossing. And, I mean, a touching is not necessarily a lane deviation. Mr. Papenbrook never left his lane, and I think that is relevant. I think that that is part of the totality of the circumstances in this case. So while the case doesn't turn on the fact that he briefly touched the lane line, it is certainly relevant that it was a touching, not a crossing, that it was very brief and not for an extended period. All of that goes to the totality of the circumstances, Your Honors. My question is similar, but the state is very different from top to bottom. You've got a lot of municipalities, you've got population areas with lots of lights, but you have probably more areas with no lights. And many police officers don't have dash cams because it's just not affordable within the county or whatever. What if, you know, if this bright line were imposed and there is no dash cam, how far can an officer see ahead? I've had deer run in front of me that I didn't almost see. I don't know how a car, two or three car lengths behind me would see it other than they saw my lights. How are we supposed to then make a determination? Will the defendant have to come forward and testify? I didn't see, you know, I saw the deer. I'm sorry, the police officer didn't see the deer. I saw the dog. I'm sorry, the police officer didn't see the dog. How are we going to deal with that if we don't have some sort of a bright line that touching or not touching, you know, touching one way or the other is or is not lane usage problem? Well, I think that that relates more to what the, you know, whether it's obvious, whether the reasons for the touching versus crossing or what have you are apparent. And that's, I think, what kind of packet was getting at was that this defendant crossed the lane line twice for no obvious reason. And I think where the reasons are obvious, where it's apparent, which it was in this case based on how closely the officer was following Mr. Papenbrink, I mean, even without a dash cam, I mean, the testimony could have established, I mean, Mr. Papenbrink said suddenly the officer's car was roaring up behind me and I'm like, what's going on? I mean, both he and the officer testified about how close the officer was to him. So I think that, you know, touching versus crossing, again, it depends on the circumstances and what the parties testify to. If the officer says, I was 100 feet behind him, I couldn't see any of that. And, you know, after the fact, the court says like, okay, well, you know, the defendant said he did see that, but you didn't see it. It wasn't obvious. It wasn't apparent why that happened. That could theoretically support a stop. But here the officer was close enough to see everything that the dash cam video showed. And I think under these circumstances it makes it clear that there was no obvious, that there was obvious reasons for the line touching and, therefore, the stop was unjustified. Unless the court has further questions, I will briefly conclude. Thank you. No reasonable person would believe that Mr. Papenbrink failed to drive as nearly as practicable within a single lane under the circumstances present in this case. Therefore, he asks that this court give due weight to inferences drawn from the facts by the trial court and affirm its order. Thank you. Thank you. Mr. Bernhardt. Is it Bernhardt or Bernhardt? Bernhardt. Bernhardt. Bernhardt. In Swiss German, Your Honor. This statute was written to promote roadway safety. This stop proves that it took a person who was driving drunk off the road. That's why I think we need a red line test. In practicality, this officer noticed this truck braking behind him. How do we know that he was driving drunk? He didn't take a breathalyzer, did he? Yes, he did. Oh, and that indicated that he had? Yes, he was quite a bit over the 0.08. He wouldn't take the field test. But it promotes safety. We need a bright line to give these officers. You know, they're not going to pull people over. They don't have the time. Everyone who crosses the line, like you said, people cross lines. But he had a reason whether the trial judge believed it or not. His reason why this person was driving a little bit too fast around the corner with these lights on. And, you know, before, not even long after, he started following this fellow. He's already out of his lane. Now, granted, there was no following there until the end. But he made a wide, and there's plenty of cases, you know, a wide turn there. There are many cases out there where if you're even weaving within the lane, the officer has a reasonable, articulable suspicion to stop you because you're staying, you know, because of that weaving that shows drunk driving or under the influence of something else. In Leidendecker, this officer followed this person for two miles. It didn't happen right away. The road was hilly. It was curvy. There was low visibility. I don't think on the video it shows that there's low visibility. You can see it's nighttime, of course, but you can still see pretty well out there. There wasn't snowing, raining, or fog. If we, you know, we had that case in Flint. The defendant just crossed the center line once, hit the center line. The officer then saw him pull into, you know, a parking lot and do a donut. Well, that was enough for him to say, okay, there's something else going on. He pulled that person over. I think right there it shows. It's, you know, the bright line is you touch it, but in practicality the officer is going to say, okay, what else is he placing? Why am I alerted on this particular person? And to watch that particular lane if we look at a practical circumstance. But that's why I think we're promoting highway safety, and that's why the legislature passed this law, and I think it should be interpreted that way. Maybe the bright line should be before you drive your car, you drive to the nearest police station and do a blow to make sure you're not drunk. Well. Why not? Well, I mean, you do have to do a blow, you know, when you've had a DUI and they, you know, put the machine on it. I know that's extreme. But I think. Just include it in the ignition system and people would have to blow into it. Correct. Or a car operator. Yes. Well, I mean, I think certainly that may be going too far and that's an extreme example, but I think under these circumstances it certainly follows. I don't think. You just said under these circumstances. Right. You want a bright line rule that says if you touch that fog line, the police officer can stop you. Which is it? Under the circumstances or when you touch? I'm saying that it's a practical matter. But I think, yes, it should be able to because if you're crossing the line, you're not driving near as practical within the lane. You know. If you have nothing to see as you make the curve because it's broken since there'll be possible, you know, whatever coming at you, how do you know where it is when it starts again? Well, I. You guess? I think you rather, you know when you've gone way right. Well, my husband thinks I go way right all the time and I don't. So, you know, reasonable, well, sort of reasonable people can disagree on that issue. I mean, we're talking about taking someone's livelihood away, taking their driver's license away because they made a wide turn and did not know exactly where the white line would reappear. Well, that's your example. Well, my example, I guess my thing is we've taken a person off the road who could get in a serious accident where they're killing themselves or someone else or injured. But that's only after the fact. We know that. We can't just stop everybody who looks like this doesn't look right. This is not. I understand, but that's the reason for a Terry stop. You have to have a reasonable, articulable suspicion. This officer, we contend, definitely did by hitting that fog light. You know, you know when you're a little bit wide, but when you go like that and you're hitting the fog light, you're pretty light and you can look across and see that fog light on the other side of the intersection. I'm sorry. I'm sorry. Go ahead. If the bright line rule was that you have to cross the line, that assumes that the line has been properly located or situated to actually establish where the lane ends under IDOT regulations. If the other bright line rule was, or I should say that if it related to merely touching, it still doesn't change the fact that there may be other circumstances like in Hackett where they didn't touch it just once, but they were supposedly weaving. And those circumstances, according to Hackett, were such that regardless of whether there's a bright line rule about touching or crossing, the police officer can still stop based upon the totality of the circumstances. So what's the efficacy of having a bright line rule? Because if, as in Hackett, the totality of the circumstances establish that there was an articulal suspicion, that there was a lane violation, then why do you need the bright line rule? Well, I'm just saying that the bright line rule is the fact that when you touch a lane line, a stripe, a center line, you are not driving as practical as you can within the lane. That's the bright line I'm talking about. Again, I'm saying then you look at the totality of circumstances. That's one way to look at it. The bright line is saying as a matter of law, you are not driving in that lane when you touch one of those lines. That's all we're saying here. Then you look at the totality of the circumstances there and make the decision from there. But as far as that's what it means, that's what the statute means, that's what we're suggesting. You're prepondering an infamy, which is a syllogism based upon a premise that is taken for granted. And the premise that's taken for granted is that all fog lines are situated where they're supposed to be, and where they're supposed to be is actually outside the lane. Because if you touch a fog line that is outside the lane, then you've gone outside the lane. But if the fog line is part of the lane, touching the fog line doesn't mean you've left your lane. So if your argument is based upon a premise that is presumed but not established, you're going to have to at least, if you're going to argue a bright line test, you're going to also require the police officers, like I said, some expert to come in and say that we measured from the center line of the highway and based upon IDOT regulations, this particular fog line actually was in the lane or was outside the lane. Well, I think it can be a general rule that that's how it's done. I mean, there are reasons why they put these lines here, but they're there. I'm sorry. What if the center lane, and I mean, we're getting into something that I hate called arithmetic and physics, but what if the center lane is half of the center lane is in the right lane and half of the center lane is in the left lane as a matter of feet, and you're in the right lane and you just touch it? Are you outside of your lane? And the answer to that would be no if, in fact, it is not. It's in each lane. You're still in your lane by touching it because it still goes an extra two, three, or four feet beyond or two, three, or four inches even beyond. I'm not sure the center line of it. Well, is it an easement? Is the center line an easement that isn't in anybody's lane and it's just there? Or is it half part of this lane and half part of that lane? Well, our position is that that center lane, if you touch it, you are out of your lane. That's what the statute says. Where? Where does it say that? Well, that's how we're interpreting because it's not being as near as practical because, like I said before, when your tire is on that center lane, your car is hanging over. Someone is coming from the other side, their tire is on the center lane, we have a collision. And, you know, I don't see how that could be doubted because tires can touch the lanes and cars can hang over and hit, so it has to be within that lane. A smart car is not going to hang over. If you've seen a smart car, they sit right on the wheel. You know, if there's right on the wheel, but there's several cars and several trucks that aren't there. Now the bright line isn't going to work because that car isn't over the center line. Well, no, it is still over the center line because the tires are touching. If you have two smart cars coming together, well, maybe they won't hit, but they're still not within their lane, and that's a safety question right there. I've done research, and my research seems to indicate that IDOT suggests that the center line of a highway demarks the lanes. And if the yellow line is in both lanes, as opposed to what you've suggested, which is the center line is no man's land because it doesn't belong to either lane of traffic, then your argument has some sense. The only problem is my research of IDOT regulations indicate that the center line, the painted portion we would call the center line, is not a no man's land. So unless you actually touch and go over half of it, how is it? Oh, I'm sorry. Your argument is if you touch the center line, then part of your car is over on the other lane, correct? Correct. And that's the reason why we should assume, whether it's no man's land or otherwise, that it's a bright line test that should be applied. Yeah. The fact is maybe it is a no man's land, but the fact is this statute, we're talking about promoting public safety. Isn't that the benchmark of every single quasi-criminal or criminal statute, ordinance, rule, or regulation which is a reasonable exercise of the police power? Yes. But the fact is it's still, you know, what is practicable is what may be done, practiced, or accomplished, which is preformable, feasible, or causable. It's totally feasible to stay within those lines. Once you're out of those lines, you're no longer in the lane. And then that officer has a reasonable articulable suspicion. He doesn't have probable cause, but he does have, you know, enough information to make a stop. When he looks at the other totality of circumstances, and in this case this was, you know, the breaking, the fact that he was way over at the intersection when there was any line. And we would request that this court find that the trial court was incorrect. What about the credibility issues that the police officer was considered less credible than the defendant? Well, and I spoke to it a little bit, is the fact is, you know, I think you can look at the video and make that judgment yourself. As far as getting beyond the other thing that becomes abuse of discretion, I, of course, believe it was abuse of discretion. I believe the officer's testimony, but that is up to your honors. I can only get that far. Okay. Thank you. Thank you. We'll take the case under revised, but we're going to take a short recess. We have other cases on the call.